UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

CONSERVATION LAW FOUNDATION, INC.,
Plaintiff,

v.

TWIN RIVERS TECHNOLOGIES HOLDINGS, INC. and
TWIN RIVERS TECHNOLOGIES MANUFACTURING
CORPORATION,
Defendants.

No. 1:23-cv-11858-MPK

---

**CONSENT DECREE**

WHEREAS, Plaintiff Conservation Law Foundation ("CLF") filed this action on August 14, 2023, against Twin Rivers Technologies Holdings, Inc. and Twin Rivers Technologies Manufacturing Corporation (collectively, "TRT" or "Defendants");

WHEREAS, Plaintiff is a nonprofit environmental organization incorporated in Massachusetts;

WHEREAS, Defendants operate a manufacturing facility located at 780 Washington Street in Quincy, Massachusetts 02169 (the "Facility");

WHEREAS, Plaintiff alleges in its complaint (the "Complaint") that Defendants violated National Pollution Discharge Elimination System Permit 2010 Permit No. MA0004073 ("NPDES Permit"), Sections 301(a) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1344, and applicable regulations, and provisions of its 2012 Title V Operating Permit (the "Title V Permit"), the June 2015 Air Quality Plan Approval (the "June 2015 Plan Approval"), and the October 2015 Amended Air Quality Plan Approval (the "October 2015 Plan Approval," collectively, the "Plan Approvals"), Section 502(a) of the Clean Air Act, 42 U.S.C. § 7661(a), the Massachusetts State Implementation Plan, and applicable regulations;

1

WHEREAS, Defendants dispute the allegations in the Complaint;

WHEREAS, Plaintiff and Defendants (collectively the "Parties") have negotiated this Consent Decree in good faith and at arm's length, and agree that the settlement of the above-captioned action (the "Action") through this Consent Decree without further litigation is fair and efficient, avoids further expense and time of further litigation, is in the public interest, and is a fair, reasonable, and appropriate means of resolving all claims in the Action;

WHEREAS, Defendants do not admit to any factual and legal allegations herein or in the Action, except as provided in Section I (Jurisdiction and Venue), below;

WHEREAS, the Plaintiff and Defendants each consent to the entry of this Consent Decree without further trial, argument, or appeal;

WHEREAS, pursuant to 42 U.S.C. § 7604(c)(3) and 33 U.S.C. § 1365(c)(3), this Consent Decree is being forwarded to the United States Department of Justice and to the United States Environmental Protection Agency ("EPA") for the forty-five (45) day review period mandated by the CAA and the CWA, respectively;

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), below, and with the consent of the Parties,

IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Federal Clean Water Act, 33 U.S.C. § 1365(a)(1)(A), Section 304(a) of the Federal Clean Air Act, 42 U.S.C. § 7604(a), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

2.      Venue is proper in the District of Massachusetts pursuant to Section 505(c)(1) of the Federal Clean Water Act, 33 U.S.C. § 1365(c)(1) and Section 304(c)(1) of the Federal Clean Air Act, 42 U.S.C. § 7604(c)(1).

3.      Plaintiff gave Defendants notice by a letter (the "Notice Letter") of the violations alleged in the Complaint more than sixty (60) days prior to commencement of this lawsuit. Copies of the Notice Letter were also mailed to the Administrator of the EPA, the Regional Administrator of the EPA for Region 1, the Massachusetts Department of Environmental Protection ("MassDEP") Commissioner, and the EPA Citizen Suit Coordinator. Neither EPA nor MassDEP commenced any action prior to Plaintiff's filing of the Complaint on August 14, 2023. Defendants disputed the assertions in the Notice Letter and Complaint.

4.      Solely for the purposes of this Consent Decree and the underlying Complaint, and any action to enforce this Consent Decree, Defendants consent to this Court's jurisdiction and to venue in this judicial district. Defendants consent to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree. Except as expressly provided for herein, this Consent Decree shall not directly create any rights in or obligations of any Party other than the Parties to this Consent Decree.

5.      This Court shall retain jurisdiction over this case until the Termination Date for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections XI (Dispute Resolution) and XV (Modification) or effectuating or enforcing compliance with the terms of this Consent Decree.

## II.      APPLICABILITY

6.      Upon the Effective Date, the obligations of this Consent Decree shall apply to, and be binding upon, Plaintiff and Defendants, and any successors, assigns, or other entities or persons otherwise bound by law.

7.      The duties and obligations under this Consent Decree shall not be modified, diminished, terminated, or otherwise altered by the transfer of any legal or equitable interest in the Facility or any part thereof.

8.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure of any of its officers, directors, employees, or agents to take actions necessary to comply with the provisions of this Consent Decree.

### III.    DEFINITIONS

9.      Terms used in this Consent Decree that are defined in the CAA or in regulations promulgated by EPA and MassDEP pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Consent Decree. All references to a duration of "days" shall be calendar days unless otherwise specified. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.   "Effective Date": The date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's Docket.

b.   "Implementing Organization(s)": Each of the third-party entities, Neponset River Watershed Association and Tree-Plenish, implementing the Environmentally Beneficial Projects described in Exhibit A of this Consent Decree.

c.   "Termination Date": The date on which the Consent Decree term ends. Five years after the Effective Date pursuant to Section XIV (Effective Date and Termination).

## IV.   COMPLIANCE MEASURES

A.     Title V Permit and Plan Approvals

10.     Defendants shall comply with their Title V Operating Permit, June 2015 Air Quality Plan Approval, October 2015 Amended Air Quality Plan Approval (together with the June 2015 Air Quality Plan Approval, the "Plan Approvals"), the Clean Air Act, applicable Clean Air Act regulations, and the Massachusetts State Implementation Plan. Should any Plan Approvals be renewed, modified, or revised, Defendants shall comply with the conditions of any renewed, modified, or revised Plan Approvals until the Termination Date of this Consent Decree or until the Parties agree to other parameters. Defendants shall send CLF a copy of any renewed, modified, or revised Plan Approval within 14 days of receiving them.

11.     Defendants shall maintain compliance with all numeric emission limits in their Title V Operating Permit and Plan Approvals, including limits for Carbon Monoxide, Nitrogen Oxides, and Volatile Organic Compounds ("VOC").

12.     Defendants shall maintain compliance with all operational requirements in their Title V Operating Permit and Plan Approvals, including for emissions compliance testing.

13.     Defendants shall maintain compliance with all nuisance abatement requirements in their Title V Operating Permit and Plan Approvals, including the prohibition on causing or contributing to a condition of air pollution and the requirement to abate nuisance conditions.

14.     Regenerative Thermal Oxidizer ("RTO"): Defendants shall make improvements to and maintain their RTO in the following manner:

a.   Within the first six months of the Effective Date of this Consent Decree, Defendants shall conduct a balancing of the RTO. Alternatively, if a balancing has already been conducted within six months of the Effective Date, Defendants shall produce to CLF the result thereof within seven (7) days of the Effective

5

Date. Thereafter, Defendants shall conduct a balancing of the RTO on an annual basis during the term of this Consent Decree and shall transmit the result of same to CLF within seven (7) days of receipt.

b. During the first annual maintenance shutdown following the Effective Date of this Consent Decree, Defendants shall perform servicing on the RTO. The servicing will include an inspection and tuning of the RTO, and, if necessary, parts replacement. Defendants shall send CLF the results of the servicing within fourteen (14) days after completion of annual maintenance shutdown.

c. If the balancing and/or servicing identifies an issue with the RTO, Defendants must, within seven (7) days, develop a plan to remedy the issue within thirty (30) days of detection, subject to parts/service availability. If delay occurs due to parts/service availability then Defendants will, within three (3) days of the discovery of the delay, notify CLF as to the extent of the delay and shall establish a mutually agreeable remediation timeline in light of such delay.

15.    In the event that Defendants fail to comply with any of their obligations under this Section IV.A, Defendants shall pay supplemental payments as outlined in the below "Supplemental Payments" section.

B.    NPDES Permit

16.    Defendants shall comply with their National Pollutant Discharge Elimination System ("NPDES") Stormwater and Non-Contact Cooling Water Permit, the Clean Water Act, applicable Clean Water Act regulations, and State Surface Water Quality Standards. Should the NPDES Permit be renewed, modified, or revised, Defendants shall comply with the conditions of any renewed, modified, or revised NPDES Permit until the Termination Date of this Consent

Decree or until the Parties agree to other parameters. Defendants shall send CLF a copy of any renewed, modified, or revised NPDES Permit within 14 days of receiving it.

17.     Stormwater Discharges

    a.     Defendants shall maintain compliance with all effluent limitations for stormwater discharges, including effluent limitations for oil and grease.

    b.     Within thirty days of the Effective Date of this Consent Decree, Defendants shall make modifications to their Best Management Practices and control measures at the Facility located at 780 Washington Street in Quincy, Massachusetts, 02169 (the "Facility") as necessary to meet the benchmark concentrations for nitrogen and zinc and to be agreed upon by Defendants and CLF. Control measures shall include the following:

        i.     Using methods not designed to cause harm to deter birds from roosting or nesting on the Facility roofs;

        ii.     Sweeping parking areas at the Facility to remove guano, shells, and feathers; and

        iii.     Removing ballast that could store pollutants from the Building 11 roof.

18.     Non-contact Cooling Water Discharges

    a.     Defendants shall maintain compliance with all effluent limitations for non-contact cooling water discharges, including effluent limitations for temperature and flow rate.

    b.     Defendants shall maintain the following process cooling water controls at the Facility: (1) change TI_U872 Sea Water Discharge to Bay High alarm from

84°F to 82°F to allow more time for operators to respond to temperatures

approaching the NPDES Permit effluent limitation.

19.     In the event that Defendants fail to comply with any of their obligations under this

Section IV.B, Defendants shall pay supplemental payments as outlined in the below

"Supplemental Payments" section.

## V.     COMPLIANCE MONITORING

A.     Title V Permit and Plan Approvals

20.     Defendants shall comply with all inspection, monitoring, and reporting

requirements set forth in the Title V Operating Permit, Plan Approvals, Massachusetts SIP, and

EPA and Massachusetts regulations.

21.     During the term of this Consent Decree, Defendants shall send to CLF their

Operating Permit Annual Compliance Certification and Report by January 30th of each year,

their Air Operating Permit Semi-Annual Compliance Monitoring Summary by July 31st of each

year, and their Quarterly Compliance Report and Certification for Wet Scrubbers (PCD1/PCD2 –

EU4) within thirty (30) days of the end of each quarter.

22.     During the term of this Consent Decree, Defendants shall copy CLF on all

compliance-related documents related to air quality or Clean Air Act compliance regarding the

Facility submitted to EPA, MassDEP, or any town. Such documents shall be provided to CLF

concurrently as they are sent to the agencies and/or municipalities. Such transmissions shall not

include non-compliance-related documents, such as maintenance and operational records.

23.     During the term of this Consent Decree, a third-party environmental consultant,

who shall be agreed upon by both Parties, shall conduct an odor test at the Facility if an odor

complaint directed at Defendants is received by (1) Defendants, (2) state regulators, and/or (3)

CLF. Pursuant to this provision, Defendants are obligated to conduct a maximum of two (2) odor

tests per year. If the environmental consultant, upon consideration of operations of the Facility and other potential sources of odors located within the vicinity of the Facility, determines that odors from the Facility are causing or creating a condition of air pollution or nuisance, this finding will result in a failed odor test.

    a.   In the event of a failed odor test, Defendants shall immediately conduct an Odor Investigation Field Audit to identify the odor sources and/or operational issues, in the form attached hereto. If the source of the odor is determined to be within Defendants' control, Defendants shall remedy the identified issues within thirty (30) days of conducting the audit. Defendants shall send CLF both the audit and any applicable remediation results within seven (7) days of receiving them.

24.    During the term of this Consent Decree, a third-party environmental consultant, who shall be agreed upon by both Parties, shall conduct a noise test at the Facility if a noise complaint directed at Defendants is received by (1) Defendants, (2) state regulators, and/or (3) CLF. Pursuant to this provision, Defendants are only obligated to conduct a maximum of two (2) noise tests per year. If the environmental consultant, upon consideration of operations of the Facility and other potential sources of noise located within the vicinity of the Facility, determines that noise from the Facility violates the noise level requirements in the Air Operating Permit ("AOP"), this finding will result in a failed noise test.

    a.   In the event of a failed noise test, Defendants shall immediately conduct a Noise Investigation Field Audit to identify potential noise sources and /or operational issues, in the form attached hereto. If the source of the noise is determined to be within Defendants' control, Defendants shall remedy the identified issues within thirty (30) days of conducting the audit. Defendants shall send CLF both the audit and remediation results within seven (7) days of receiving them.

9

25.     In the event that Defendants fail to comply with the obligations in this Section V.A, Defendants shall pay supplemental payments as outlined in the below "Supplemental Payments" section.

B.     NPDES Permit

26.     Defendants shall comply with all inspection, monitoring, and reporting requirements set forth in the NPDES Permit and the regulations of EPA.

27.     During the term of this Consent Decree, Defendants shall send to CLF their Discharge Monitoring Reports within thirty (30) days of submission. Any associated data relating to results in excess of the discharge permit will be submitted to CLF no later than thirty (30) days after Defendants have received the complete laboratory results for all monitoring discharge points for the reporting period or forty-five (45) days following the end of the reporting period, whichever is earlier. Additionally, Defendants shall send to CLF their quarterly monitoring reports within thirty (30) days of the end of each quarter.

28.     During the term of this Consent Decree, CLF, through representatives, may conduct up to four (4) scheduled site inspections at the Facility. No more than one (1) inspection will occur annually. During the site inspection, the CLF representative, as accompanied by relevant TRT personnel, may, subject to provision of certification of any applicable required training (including but not limited to HAZWOPER training certification), enter the Facility, inspect all non-contact cooling water and stormwater infrastructure (including treatment, control, drainage, and other systems), take photos and video at the Facility (subject to Defendants' approval that such photos or videos would not violate Defendants' trade secrets), speak with relevant Facility staff, and monitor compliance with the NPDES Permit and this Consent Decree.

29.     During the term of this Consent Decree, Defendants shall copy CLF on all compliance-related documents regarding non-contact cooling water quality at the Facility

submitted to EPA, MassDEP, or any town. Such documents shall be provided to CLF concurrently as they are sent to the agencies and/or municipalities.

30.     In the event that Defendants fail to comply with the obligations in this Section V.B, Defendants shall pay supplemental payments as outlined in the below "Supplemental Payments" section.

## VI.     PAYMENTS

31.     Defendants shall make two payments to fund Environmentally Beneficial Projects which support (1) water quality improvement measures with the goal of promoting restoration, preservation, protection, or other beneficial impacts on water quality in the Town River Bay and Weymouth-Fore River areas, and (2) air quality improvement measures and/or monitoring initiatives with the purpose of reducing air pollution in the Quincy, Massachusetts. These payments will be made pursuant to the terms provided in Exhibit A (EBP Funds). The two payments shall be in the amount stated below and distributed to the following recipients on the following schedule:

     a.     One payment of $300,000 to the Neponset River Watershed Association (NepRWA), on or before 90 days following the Effective Date.

     b.     One payment of $300,000 to Tree-Plenish, on or before 120 days following the Effective Date.

32.     Each Implementing Organization will submit to CLF, pursuant to the notice provisions in Section XI (Notices), annual status reports due each year on the anniversary of the payment deadline in Paragraph 31(a)-(b) while EBP funds are being spent. The status reports will include, at a minimum, the following information: (1) description of the activities completed to date and related expenditures of EBP Funds and (2) discussion of any anticipated changes to the scope of timeline of the Environmentally Beneficial Projects. If the Implementing

11

Organizations fail to spend EBP Funds in accordance with the terms provided in Exhibit A, Defendants and Plaintiff will have no additional obligations or liabilities.

33.     Within thirty (30) days of the Effective Date, Defendants shall pay Plaintiff $121,000 which the Parties agree constitutes Plaintiff's legal costs and lodestar reasonable attorneys' fees incurred in connection with its work on this matter; such payment will constitute the full satisfaction of legal costs and fees associated with this matter except that Plaintiff retains the right to seek costs and reasonable lodestar attorneys' fees incurred in enforcing this agreement in the event that Defendants are found to have violated any provisions of the agreement.

34.     Defendants shall pay a fee of $500 per day for any payments made pursuant to this Consent Decree that are more than fourteen (14) days late following notice by CLF and opportunity to cure. Curing such failure to pay will be made within fourteen (14) days of notice of the failure to meet the deadline. Late fees for the late payment of the Plaintiff's fees and costs shall be paid to CLF. All other late fees shall be paid to the Environmentally Beneficial Project recipients in equal parts.

## VII.   SUPPLEMENTAL PAYMENTS

35.     Defendants shall be liable for supplemental payments for each exceedance of the Title V Operating Permit and Plan Approvals' numeric emissions limitations, each violation of the Title V Operating Permit and Plan Approvals' operational requirements, each exceedance of the NPDES Permit's effluent limitations and benchmark limitations, each failure to make modifications to their Best Management Practices and control measures at the Facility after the four quarter average for a parameter exceeds a benchmark concentration, and each  failure to abate nuisance conditions as follows:

A.      Title V Permit and Plan Approvals

36.      Payments for the exceedance of the Title V Operating Permit and Plan Approvals' numeric emission limitations for each parameter (carbon monoxide, nitrogen oxide, and volatile organic compounds) at each emissions unit: $1,000 per exceedance for the first six months of this Consent Decree term and $2,500 per exceedance from six months from the Effective Date to the termination of this Consent Decree.

37.      Payment for failure to comply with the Plan Approval's requirement to provide either a minimum VOC destruction efficiency of 97 percent by weight or a maximum outlet of VOC emission rate of 0.15 pounds per hour, whichever is less stringent: $1,000 per exceedance for the first six months of this Consent Decree term and $2,500 per exceedance from six months from the Effective Date to the termination of this Consent Decree.

38.      Payments for the failure to comply with the Title V Operating Permit's emissions compliance testing requirements: $1,000 per failure to comply for the first six months of this Consent Decree term and $2,000 per failure to comply from six months from the Effective Date to the termination of this Consent Decree.

39.      Payments for failure to remedy odor issues as identified as arising from a source determined to be within Defendants' control by an audit within thirty (30) days of identification: $500 per day per missed deadline. B.

40.      Payments for failure to remedy noise issues as identified as arising from a source determined to be within Defendants' control by an audit within thirty (30) days of identification: $500 per day per missed deadline.

41.      Payments for the failure to make improvements to and maintain the RTO as described in Compliance Measures Section E of this Consent Decree ($1,000 for failure to conduct a balancing of the RTO within the first six (6) months of this Consent Decree term;

$1,000 for failure to service the RTO during the first annual maintenance shutdown following the Effective Date of this Consent Decree; $1,000 for each failure to conduct an annual balancing of the RTO; and $1,000 for each failure to remedy an issue with the RTO within the first thirty (30) days of said issue being identified by a RTO balancing and/or servicing) subject to parts/service availability and in compliance with the requirements in "Compliance Measures E.3".

42.      Payments for the failure to timely comply with the monitoring and reporting requirements set forth in the Title V Permit, Plan Approvals, and this Consent Decree ($500 per day per missed deadline).

B.      NPDES Permit

43.      Payments for the exceedance of the NPDES Permit's effluent limitation for each parameter at each Outfall: $500 per exceedance for the first six months of this Consent Decree term and $750 per exceedance from six months of the Effective Date to the termination of this Consent Decree.

44.      Payments for the failure to timely comply with the monitoring and reporting requirements set forth in the NPDES Permit and this Consent Decree: $500 per failure to collect and report a sample per parameter.

45.      Payments for the failure to comply with the schedule to implement and/or maintain Best Management Practices and control measures at the Facility as necessary to meet the benchmark concentrations in the NPDES Permit: $500 per day per missed deadline.

46.      Payments for the failure to provide CLF in a timely manner with monthly and quarterly Discharge Monitoring Reports and annual certifications: $500 per day per missed deadline.

14

C.       Payment Suspension Schedule

47.       Should Defendants remain in compliance with individual parameters of this Consent Decree for four (4) consecutive quarters, associated supplemental payments will be suspended unless Defendants fail to meet discharge limits two (2) times in any following (4) consecutive quarters.

48.       Should Defendants remain in compliance with individual parameters of this Consent Decree for eight (8) consecutive quarters, CLF will consider this parameter in compliance and will release that parameter from this supplemental payment provision.

49.       Should Defendants remain in compliance with all individual parameters of this Consent Decree for twelve (12) consecutive quarters, CLF will suspend the supplemental payment provision.

50.       All supplemental payments shall be paid to the Environmentally Beneficial Projects recipients within thirty (30) days of each exceedance, failure to comply, or missed deadline.

## VIII.     MISCELLANEOUS

51.       Defendants shall be offered a reasonable opportunity to review and comment on any press release, related to the lawsuit issued by CLF, as early as practicable prior to its release.

52.       Defendants shall perform the actions required by this Consent Decree within the time limits established therein, unless the performance is prevented or delayed by events that constitute a Force Majeure event.

53.       "Force Majeure," for purposes of the Consent Decree, is defined as any event arising from causes beyond the control of Defendants that delays or prevents the performance of any obligation under the Consent Decree despite Defendants best efforts to fulfill the

obligation. Force Majeure events shall include, but are not limited to, war or violent uprisings, natural disasters, labor strikes, transport delays, civil unrest, a declared state of emergency, and any public health concerns. The requirement that Defendants exercise best efforts to fulfill the obligation includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay or non-performance during such event to the greatest extent possible. Force Majeure does not include Defendants' financial inability to perform any obligations under this Consent Decree. Unanticipated or increased costs or expenses associated with the performance of Defendants' obligations under this Consent Decree shall not constitute circumstances beyond Defendants' control, nor serve as the basis for an extension of time under this Section and shall not constitute an event of Force Majeure.

54.     If any event occurs or has occurred that may delay or prevent compliance with the performance of any obligation under this Consent Decree, as to which Defendants intend to assert a claim as an event of Force Majeure, Defendants shall provide written notice to CLF of such claim in accordance with Section XI (Notices), as soon as practicable but no later than thirty days (30) following the date Defendants first had notice that the claimed Force Majeure event may cause such delay or impediment and give rise to a claim of Force Majeure. Upon providing notice of Force Majeure, Plaintiff shall have the right to request all necessary documentation explaining the potential delay. If requested, Defendants shall have 10 days from the date of the request to provide the documentation. During the period of any Force Majeure events, supplemental payments shall not accrue.

55.     Plaintiffs shall have the right to dispute the designation of an event as Force Majeure, the potential delay of an obligation due to Force Majeure, or the elimination of any of

Defendants' obligations due to Force Majeure. This dispute will follow the procedure outlined in Section IX (Dispute Resolution).

56.     Defendants shall not deduct any payments paid under Section VI (Payments) or Section VII (Supplemental Payments) in calculating its federal, state, or local income tax.

## IX.     DISPUTE RESOLUTION

57.     Any dispute arising from this Consent Decree will be discussed, in good faith, between the parties prior to either party seeking court intervention. This good faith discussion shall include the party contemplating court intervention providing an advance copy of all documents the party intends to file with the court to the other party at least 10 days prior to the filing of said document(s) with the court. Upon review of such advance copy or copies, the parties shall, in good faith, meet via Zoom, phone or in person to attempt to both narrow and resolve any disputes. Only if this discussion does not resolve such disputes may the initiating party proceed to file such document(s) with the court.

58.     The Court shall retain jurisdiction over this case until the Termination Date to enforce the terms and conditions of the Consent Decree, to modify the Consent Decree, and to resolve any disputes arising hereunder.

## X.     EFFECT OF SETTLEMENT

59.     Defendants do not admit any facts or liability arising out of or related to the allegations set forth in Plaintiff's Complaint.

60.     Entry of the Consent Decree shall resolve any and all claims, causes of action, or liability arising under the CWA or CAA and Massachusetts state law brought by the Plaintiff against Defendants for damages, penalties, fines, injunctive relief, past and future attorneys' fees, past and future costs, or any other claim or relief relating to the violations that were alleged, or could have been alleged, in the Complaint or in this action.  Plaintiff

17

covenants not to sue, releases, and forever discharges Defendants from all such claims,

allegations, damages, losses, equitable relief, penalties, fines, fees, costs, harm, causes of

action, or liabilities arising on or before the Effective Date.

61.     This Consent Decree shall not be construed to create rights in, or grant any cause

of action to, any third party not party to the Consent Decree.

## XI.    NOTICES

62.     Unless otherwise specified in this Consent Decree, notices and submissions

required by this Decree shall be made in writing by email to the following addresses:

> For Plaintiff:
> Clean Air and Water Paralegal
> c/o Ruby Verbitsky
> Conservation Law Foundation
> 62 Summer Street
> Boston, MA 02110
> rverbitsky@clf.org
>
> For Defendants:
> Stephen M. LaRose
> Ronaldo Rauseo-Ricupero
> Nixon Peabody LLP
> Exchange Place
> 53 State Street
> Boston, MA 02109
> slarose@nixonpeabody.com
> rrauseoricupero@nixonpeabody.com

or, to such other place or to the attention of such other individual as a party may from time to

time designate by written notice to the other parties to this Consent Decree. All notifications,

communications, or submissions made pursuant to this Section shall be sent by electronic mail,

but if not practicable, then by overnight mail or overnight delivery service. Any Party planning a

communication by non-electronic means should first attempt to contact the opposing Party to

confirm the appropriate mailing address.

## XII.   EFFECTIVE DATE AND TERMINATION

63.     Following the expiration of the 45-day review period provided by 42 U.S.C. § 7604(c)(3) and 33 U.S.C. § 1365(c)(3), the Plaintiff will move the Court for entry of this Consent Decree.

64.     If the Court declines to approve this Consent Decree in the form presented, the Parties agree to continue negotiations to cure any obligations to entry of this Consent Decree raised by the Court.

65.     The Effective Date of the Consent Decree shall be the date upon which the Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's Docket (the "Effective Date"). All obligations arising under the Consent Decree shall become effective as of the Effective Date.

66.     The Consent Decree shall terminate five years after the Effective Date on the "Termination Date".

## XIII.   INTEGRATION

67.     Except as expressly set forth in this Consent Decree, this Consent Decree sets forth all of the obligations of the parties and represents the complete and exclusive statement of the parties with respect to the terms of the settled agreement embodied by this Consent Decree; any other representations, communications, or agreements by or between parties shall have no force and effect.

## XIV.   SEVERABILITY

**68.**     The provisions of this Consent Decree shall be severable, and should any provision hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the Parties.

## XV.   MODIFICATION

69.     The terms of the Consent Decree may be modified only by a subsequent written agreement signed by the Parties. Where the modification constitutes a material change to any term of the Consent Decree, it shall be effective only upon approval by the Court. The decision to extend a deadline in this Consent Decree shall not constitute a material change for purposes of this Paragraph.

## XVI.   AUTHORITY OF SIGNATORY

70.     Each undersigned representative of the Parties certifies that they are fully authorized to enter into the terms and conditions of the Consent Decree and to execute and legally bind the Party they represent to this document

71.     Electronic and scanned signatories shall be deemed originals for all purposes. Copies of the Consent Decree, whether transmitted electronically or otherwise, shall be effective. This Consent Decree may be signed by the Parties in counterparts.

## XVII.   FINAL JUDGMENT

72.     Upon approval and entry of this Consent Decree by the Court this Consent Decree shall constitute a Final Judgment of the Court.


**Conservation Law Foundation, Inc.**

By: _____          Dated: 3/13/2025

Heather A. Govern, Vice President and Director, Clean Air and Water


**Twin Rivers Technologies Holdings, Inc.**

By: _____          Dated: 3/17/2015

Scott Chatlin, President and CEO


20

**Twin Rivers Technologies Manufacturing Corporation**

By: _____   Dated: 3/17/2025

Scott Chatlin, President and CEO


IT IS SO ORDERED. JUDGMENT is hereby entered in accordance with the foregoing.


By the Court: _____   Dated: May 1, 2025

**EXHIBIT A**

## I.    ENVIRONMENTALLY BEENFICAL PROJECT DESCRIPTIONS

**PROJECT 1: COMMUNITY TREE PLANTING**

<u>Implementing Organization</u>: Tree-Plenish

<u>Project Funds</u>: $300,000

<u>Project Description</u>: The project will including the following components:

A.    Tree-Plenish will organize 15 tree-planting events with schools in Quincy and the surrounding area over the next five years (approximately 3 per year). Tree-Plenish will prioritize developing partnerships with Quincy and North Quincy High School. Each event will plant roughly 200 tree saplings, totaling 3,000 trees planted over the five-year period. Tree-Plenish will work with students and teachers at the partner schools to plan each event, and the trees will be planted throughout the community.

B.    Tree-Plenish will provide environmental education and virtual mentorship to students at the partner schools. Tree-Plenish staff will teach students about native species, tree care, and community engagement.

C.    Tree-Plenish will spend the remaining funds on educational outreach regarding tree care and sustainable practices to the neighborhoods receiving the tree saplings.

<u>Project Air Quality Benefits</u>: By increasing tree cover, these tree plantings will help offset carbon emissions and improve local air quality. Additionally, they provide hands-on environmental education, empowering students to become sustainability advocates while fostering stronger community bonds through collective action. Over time, the trees planted

through these initiatives will contribute to climate resilience, creating greener, healthier neighborhoods for future generations.

**PROJECT 2: SALT MARSH RESTORATION**

<u>Implementing Organization</u>: Neponset River Watershed Association (NepRWA)

<u>Project Funds</u>: $300,000

<u>Description</u>: The project will include the following components:

A.   NepRWA may conduct water quality monitoring in the Neponset Estuary (the tidal portion of the Neponset River in Quincy, Boston and Milton) in an effort to identify water quality impairments and secure remediation of pollution sources contributing to those impairments, with a focus on nitrogen and bacterial pollution.

B.   NepRWA will build on the soon to be completed "State of the Neponset Estuary Report" and the results of an updated coastal flood risk model being developed for the Neponset Estuary, to advance projects that will restore degraded salt marsh habitats and help existing salt marsh habitats adapt to climate change. This may include preparing design plans and permit applications for one or more projects to address salt marsh health impacts resulting from: historic mosquito ditching, excessive nutrient loading, unnatural ponding, tidal restrictions, inadequate tidal flushing, invasive species, and/or sea level rise.

C.   Funds will be used for the cost of engineering and environmental consultants, laboratory analysis, sampling equipment, NepRWA staff and interns, necessary public outreach and community engagement activities, permit application costs and/or as matching funds to support construction / implementation activities.

Project Water Quality Benefits: Healthy salt marshes provide significant water quality benefits by filtering stormwater runoff before it enters the River and thus reducing nutrients and suspended solids. Quincy, in particular, has a highly developed riverfront, making the preservation and improvement of its existing marshes an essential step in protecting and improving water quality. Assessment and documentation of nutrient pollution impairments in the Neponset Estuary may lead to the implementation of additional pollution control measures or requirements in communities in the Neponset River Estuary as well as those upstream.

## II.     GENERAL OBLIGATIONS AND REPORTING

A.     Annual Status Reports: Each Implementing Organization shall submit to CLF an annual status report each year that the EBP Funds are being spent pursuant to Paragraph 32.

B.     Unspent Funds: Any EBP Funds that remain unspent as the Termination Date will be directed to community environmental projects in Massachusetts that are similar to or serve similar purposes as the Environmentally Beneficial Projects. In the event that unspent EBP Funds exist, the Implementing Organization will submit to CLF an accounting of such funds and a description of the intended use for such unspent EBP Funds.